## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA,

         Plaintiff,

    v.

THEODORE SIDNEY WRIGHT, JR.,

         Defendant.

No. 21 CR 690

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

On July 9, 2021, during a remote bankruptcy court hearing conducted using the "Zoom" videotelephony program, Defendant Theodore Sidney Wright, Jr. spontaneously displayed the firearm he was licensed to carry. Defendant apparently made this profference to substantiate his personal fear of a creditor. Bankruptcy Judge Janet S. Baer, who was presiding over the bankruptcy case, immediately admonished Defendant for his conduct and then asked this Court to consider criminal contempt charges. In response, the Court directed Defendant to "show cause" why he should not be prosecuted for "[m]isbehavior . . . in [the Court's] presence or so near thereto as to obstruct the administration of justice," in violation of 18 U.S.C. § 401(1).

Now before the Court is Defendant's motion to dismiss the show-cause order, by which Defendant contends that his conduct cannot amount to contemptuous "misbehavior" as a matter of law. (Dkt. 20.) By rule, a show-cause order must "state the essential facts constituting the charged criminal contempt and describe it as

such." Fed. R. Crim. P. 42(a)(1)(C). That minimal standard is met here. But deciding whether the charged conduct must as a matter of law be deemed noncriminal can only happen if the question is "capable of determination" at the motion to dismiss stage. Resolving that question, in turn, depends on whether "trial of the facts" would assist in determining the issue. *United States v. Covington*, 395 U.S. 57, 60 (1969).

Because the circumstances of Defendant's alleged misconduct did not occur before this Court, and because the Court cannot, on the present record, rule out the possibility that Defendant engaged in contempt, greater development of the evidentiary record is essential to deciding whether Defendant's conduct is the type of "[m]isbehavior" prohibited by 18 U.S.C. § 401(1). Accordingly, for the reasons that follow, Defendant's motion to dismiss (Dkt. 20) is denied.

## I.   BACKGROUND

This criminal contempt proceeding arises out of an underlying bankruptcy case involving Defendant as the debtor. Defendant is a physician who operated his medical practice out of an office building located in this District. Defendant and the owner of the office building in which Defendant was a tenant became embroiled in a heated conflict, apparently because Defendant fell behind on rent payments. That dispute played a significant role in Defendant's bankruptcy proceedings.

Many of the facts at issue in the underlying bankruptcy case—especially the dispute between Defendant and his commercial landlord—are immaterial to the criminal contempt charge. (*See* Dkt. 1 ¶¶ A–C.) What is relevant is that, on July 9, 2021, the bankruptcy court held a hearing over Zoom in which Judge Baer explained

to Defendant "the consequences of [an eviction order procured by the landlord] and the bankruptcy court's lack of jurisdiction to overturn that order." (*Id.* ¶ D.) After ruling on an unrelated motion, Judge Baer offered Defendant an opportunity to speak.

As explained by Judge Baer, Defendant proceeded to "describe what he alleged was wrongful or criminal conduct on the part of the [l]andlord, explaining that the [l]andlord had threatened him, among other things." (*Id.* ¶ E.) Defendant "then showed his concealed carry permit and his gun, indicating that, as a result of the [l]andlord's behavior, he carried the weapon with him at all times." (*Id.*) When Defendant displayed his previously-concealed firearm, Judge Baer "immediately" cut Defendant off and "admonished him—telling him that he was not allowed to have a weapon in a court of law" before continuing with the hearing. (*Id.*; *see* Dkt. 1-2 at 117−18 (Under Seal).) When afforded an opportunity to respond, Defendant apologized for displaying the firearm. (Dkt. 1-2 at 118 ("I apologize for that.").)

After the July 9 hearing, Judge Baer related the hearing's events to the Clerk of the Bankruptcy Court and the United States Marshal "to stem any violence that might occur when the [l]andlord tried again to evict [Defendant] . . . , as [Defendant] had clearly indicated that he was carrying the gun to protect himself from the [l]andlord and would do what he believed was necessary to defend himself." (Dkt. 1 ¶ G.) Later the same day, the landlord filed a motion for contempt based on Defendant's conduct at the hearing. (*Id.* ¶ F.) In response, Defendant explained that his actions were not "meant to threaten any one person or the court" and

acknowledged that his "actions were inappropriate." (Dkt. 1-2 at 145.) Defendant cited the "overwhelming emotional and mental distress" brought on by learning that he was being evicted, and explained that it was "with this stress, isolation, remorse, depression and defeat that [Defendant] appeared via Zoom on July 9, 2021." (*Id.* at 142.)

After the motion for contempt was fully briefed, Judge Baer heard argument from counsel for both the landlord and Defendant. (Dkt. 1 ¶¶ H–N.) Judge Baer then found that Defendant's conduct at the July 9, 2021 hearing constituted criminal contempt in violation of 18 U.S.C. § 401(1). (*Id.* ¶ 1.) But because she did not believe bankruptcy judges have the authority to enter orders for criminal contempt, Judge Baer referred the matter to this Court "for consideration of possible criminal contempt." (*Id.* ¶¶ 2–3.)

On November 5, 2021, based on Judge Baer's findings and recommendations regarding Defendant's conduct, the Court directed Defendant to show cause why he should not be held in criminal contempt under 18 U.S.C. § 401(1) for "[m]isbehavior . . . in [the Court's] presence or so near thereto as to obstruct the administration of justice." (Dkt. 2 at 1.) On March 8, 2022, Defendant entered a plea of not guilty. (Dkt. 19.) Defendant then filed the current motion to dismiss the rule to show cause order. (Dkt. 20.)

## II.    STANDARD OF REVIEW

Show-cause orders in contempt cases are governed by Rule 42 of the Federal Rules of Criminal Procedure. *See United States v. Eichhorst*, 544 F.2d 1383, 1387 (7th Cir. 1976) (describing referral of a contempt charge to the grand jury as "in excess of the requirements of due process"); *United States v. Klein*, 1988 WL 89730, at *1 (N.D. Ill. Aug. 17, 1988) ("The sufficiency of a criminal contempt charge is governed by Fed. R. Crim. P. 42(b), whether the charge is made by indictment, or by a written or oral show cause order of the court."). That rule guarantees to alleged contemnors the opportunity to "show cause" why they should not be held in contempt. Fed. R. Crim. P. 42 (a)(1). An adequate order must "state the essential facts constituting the charged criminal contempt and describe it as such." Fed. R. Crim. P. 42(a)(1)(C).

Defendant seeks dismissal of the show-cause order under Rule 12 (Dkt. 20), which states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *see United States v. Kilgallon*, 572 F. Supp. 3d 713, 724 (D.S.D. 2021) (concluding that "the Federal Rules of Criminal Procedure do not preclude the possibility of dismissal" in criminal contempt cases). Motions to dismiss a show-cause order must clear a high bar: an issue is "capable of determination" on a pretrial motion only if "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining" the issue. *Covington*, 395 U.S. at 60 (cleaned up); *see United States v. Yasak*, 884 F.2d 996, 1001 n.3 (7th Cir. 1989) (A defense is generally "capable of determination before trial if it involves questions of

5

law rather than fact." (citation omitted)). If a pretrial issue is "substantially intertwined with the evidence concerning the alleged offense," the motion to dismiss "falls within the province of the ultimate finder of fact." *Yasak*, 884 F.2d at 1001 n.3.

Although the standard governing review of show-cause orders at the motion to dismiss stage is not entirely clear, there are several reasons that lead the Court to hold that the standard is comparable to that governing a motion to dismiss an indictment. To begin, the drafting requirement for an indictment—namely, that the indictment must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1)—is nearly identical to the "essential facts" requirement under Rule 42 (*see above*). In addition, the Seventh Circuit has explained, in the context of applying the Speedy Trial Act to a contempt proceeding, that show-cause orders are "analogous" to indictments. *See United States v. Trudeau*, 812 F.3d 578, 585–86 (7th Cir. 2016); *see also United States v. Moncier,* 492 F. App'x 507, 510 (6th Cir. 2012) (same).

By analogy to an indictment, a legally sufficient show-cause order must accomplish three things: "[f]irst, it must adequately state all the elements of the crime charged; second, it must inform the defendant of the nature of the charges so that he may prepare a defense; and finally, [it] must allow the defendant to plead the judgment as a bar to any future prosecution for the same offense." *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). Put simply, the show-cause order must "provide the defendant with some means of pinning down the specific conduct at issue," but it need not include every relevant fact. *Id.* (cleaned up). Courts review

6

such materials "on a practical basis and in their entirety, rather than in a hypertechnical manner," *id.* (cleaned up), and "there is no requirement that criminal pleadings be judged rigidly and formalistically," *Eichhorst*, 544 F.2d at 1389 (quoting *Smith v. United States*, 360 U.S. 1, 9 (1959)). "[T]echnical deficiencies (in the charging papers) which d[o] not prejudice the accused" cannot invalidate a criminal conviction. *Id.*

## III. DISCUSSION

Under 18 U.S.C. § 401, the Court is empowered to punish

> such contempt of its authority, and none other, as (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; [or] (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401. That power, as the Supreme Court of the United States has explained, is integral to "protecting the due and orderly administration of justice, and in maintaining the authority and dignity of the court." *Cooke v. United States*, 267 U.S. 517, 539 (1925). But the contempt mechanism brings with it the potential for abuse. Because contemptuous conduct "often strikes at the most vulnerable and human qualities of a judge's temperament," *Bloom v. Illinois*, 391 U.S. 194, 202 (1968), the power to issue a contempt finding must be exercised with particular care and restraint.

In its show-cause order, the Court directed Defendant to show why he should not be prosecuted under the first provision of Section 401: "[m]isbehavior . . . in [the Court's] presence or so near thereto as to obstruct the administration of justice." (Dkt.

2 at 1.) To support a conviction under that provision, the Court must be satisfied that Defendant's conduct was (1) misbehavior; (2) in the Court's presence; (3) that obstructed the administration of justice; and (4) that was done with "some form of intent to obstruct." *United States v. Seale*, 461 F.2d 345, 366–67 (7th Cir. 1972).[1]

A show-cause order need not establish each of the above elements to be legally sufficient; it need instead only notify Defendant of the charge against him and the conduct giving rise to that charge. *Anderson*, 280 F.3d at 1124. Applying that standard here (and reviewing the order on a "practical basis," *Anderson*, 280 F.3d at 1124), the Court is satisfied that the show-cause order is sufficiently detailed. More specifically, it adequately puts Defendant on notice of the charge against him (18 U.S.C. § 401(1)) and the conduct giving rise to that charge: Defendant's display of his concealed carry permit and firearm on the July 9 Zoom hearing held before Judge Baer. (Dkt. 2 at 1.)

Defendant contends, under *United States v. Kilgallon*, that the Court should dismiss the contempt charge in "the interests of justice and the public." (Dkt. 26 at 1 (quoting *Kilgallon*, 572 F. Supp. 3d at 728).) In *Kilgallon*, a judge of the District of South Dakota addressed contempt charges brought by another judge against members of the United States Marshals Service that all parties conceded were

---

[1] In his motion, Defendant argues that he "was never put on notice . . . that his display of a legally possessed, holstered firearm and concealed carry card, in his home, during a zoom proceeding, would constitute 'misbehavior' sufficient to initiate contempt proceedings." (Dkt. 20 at 3.) But, unlike Section 401(3), which prohibits "[d]isobedience or resistance to [the Court's] lawful writ, process, order, rule, decree, or command" and thus requires proof that a defendant was on notice of the instruction being disobeyed, Section 401(1) does not require proof that Defendant was on notice before engaging in the allegedly contemptuous "misbehavior." *See Seale*, 461 F.2d at 366–67.

precipitated by "conflicting desires and policies of the USMS and the Court regarding COVID-19 and court security." *Kilgallon*, 572 F. Supp. 3d at 728. Dismissing the contempt charges, the *Kilgallon* judge explained that changes in the circumstances surrounding COVID-19 ensured that the policy disputes giving rise to the contempt charges "should soon become a thing of the past." *Id.* at 728−29. Under the unique circumstances present in that case, the court held that "the public [wa]s best served by the Court and the USMS attempting to resolve their differences through the mechanisms available to them short of contempt proceedings." *Id.* at 729.

No comparably unique circumstances are present here. Although, as in *Kilgallon*, the context of this case (a video hearing held over Zoom) was precipitated by the COVID-19 pandemic, the similarities between the two cases end there. In *Kilgallon*, the federal vaccination requirements at issue were changed after the contempt charges were brought, but no parallel change in policy or practice is present here. On the contrary, many courts, including this one, continue to conduct hearings by remote means, and parties attending those hearings are still required to conduct themselves as though they were physically present in a courtroom. Moreover, in *Kilgallon*, the court pointedly noted "what, by all accounts, [wa]s going on [t]here: a policy dispute between two branches of government." *Id.* at 729. This case presents no such separation-of-powers concerns or any other reason to believe Judge Baer's contempt charge against Defendant was a proxy for another dispute. Put another way, the relevant facts do not support a finding that the interests of "justice and the

public" warrant dismissal of the show-cause order—at least at this early stage of the case.

At bottom, dismissal of the show-cause order is inappropriate because the factual record is not yet fully developed. Dismissal under Rule 12 is not appropriate where undeveloped facts would be of "assistance in determining the validity of the defense." *Covington*, 395 U.S. at 60 (cleaned up); *see* Fed. R. Crim. P. 12 (b)(1) (providing for resolution of "requests that the court can determine without trial on the merits"). Key facts in this case, including, among others, the details (and context) of Defendant's actions, whether he knew his conduct was inappropriate, and whether his conduct obstructed the bankruptcy case (and, if so, to what extent), are not yet developed—in part because the Court was not present at the July 9 hearing. All of those facts are potentially relevant to whether Defendant's conduct rises to the level of "[m]isbehavior" under Section 401(1). Because the legal question presented in Defendant's motion is intertwined with facts not yet fully developed in the record, resolution of that question is properly "within the province of the ultimate finder of fact." *Yasak*, 884 F.2d at 1001 n.3.

It bears emphasis that, with the benefit of a developed factual record, a finding that Defendant is a contemnor may be unjustified. Indeed, the Seventh Circuit has recognized the power of courts that initiate contempt proceedings to later terminate those proceedings. *See In re Dellinger*, 502 F.2d 813, 817 (7th Cir. 1974) ("We see no reason why the judge must dismiss to achieve this result, though that option is open

at least to the court which initiated the contempt proceedings.").[2] Whether that step would eventually be warranted is an open question. But what is not in question, at least in the Court's view, is that the dismissal of the show-cause order at this stage, and on the current record, would be premature.

## IV.    CONCLUSION

Defendant's motion to dismiss (Dkt. 20) is denied.

SO ORDERED in No. 21 CR 690.

Date: September 15, 2022

_____
JOHN F. KNESS
United States District Judge

---

[2] Likewise, courts that try criminal contempt cases and "find violations" are empowered to "nevertheless impose no sanctions." *In re Dellinger*, 502 F.2d at 817.